IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOELLEN M.,**

    **Plaintiff,**

v.                                                                                  No. 1:24-cv-00290-JHR

**LELAND DUDEK,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND [DOC. 11]

Before the Court is Plaintiff's Motion to Reverse or Remand. [Doc. 11]. The Commissioner of the Social Security Administration filed a response [Doc. 15] and Plaintiff replied [Doc. 16]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. [Doc. 8]. The Court has reviewed the parties' briefing, the administrative record, [Doc. 10] ("AR"), and applicable law. The Court **GRANTS** Plaintiff's motion and **REMANDS** the matter for further proceedings.

### I.    BACKGROUND

Plaintiff first applied for disability insurance benefits and supplemental security income in July of 2017, alleging disability beginning in January of 2016. (AR 268–80). The Administration denied the claims initially and again on reconsideration, and after a review hearing ALJ Jennifer Fellabaum found Plaintiff not disabled in October 2019. (AR 10–24, 162–69). Plaintiff appealed the unfavorable decision to this Court but that appeal was remanded upon the Commissioner's unopposed motion to remand for further proceedings. (AR 1193). Plaintiff filed another disability

1

claim on March 17, 2021. (AR 1111). ALJ Fellabaum held another hearing on the consolidated claims in June 2023 and thereafter issued an unfavorable written decision on August 7, 2023. (AR 1110–25). This decision became the final decision of the Commissioner and Plaintiff appealed to this Court on March 24, 2024. [Doc. 1].

## II.   STANDARD OF REVIEW

When a party appeals an adverse disability decision the court must affirm if the ALJ applied correct legal standards and supported his factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards will warrant reversal under appropriate circumstances "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors may be harmless if the ALJ's findings are sufficiently thorough and supported by the record. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the whole record to determine if the ALJ met the standard including any evidence that may undercut or detract from his findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The reviewing court

must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or her decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III. THE COMMISSIONER'S FINAL DECISION

A claimant who seeks disability benefits under the Social Security Act must demonstrate that he cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[1] 1 Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting his ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a listed disabling impairment; (4) whether the claimant's residual functional capacity ("RFC"), or his ability to sustain work-related activities regularly in a work setting, would preclude him from his past relevant work, and finally; (5) whether the claimant's age, education, experience, and RFC would enable him to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if his medical impairments are per se disabling or otherwise prevent him from performing his past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a).

**A. Steps One, Two, and Three.**

---

[1]Regulations for determining whether a claimant is disabled for both disability insurance benefits (DIB) and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 416, but the analogous regulations in Part 404 apply as well.

3

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2016. (AR 113). A step two, the ALJ found Plaintiff suffered from the following severe impairments: panic disorder, agoraphobia, personality disorder, posttraumatic stress disorder, bipolar, and attention deficit hyperactivity disorder. *Id.* The ALJ also found several non-severe impairments: asthma, gastroesophageal reflux disease, myopia and astigmatism, substance use disorder (alcohol), degenerative disc disease, and carpal tunnel syndrome. (AR 1114). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments meeting or equaling a listed impairment such that Plaintiff is per se disabled. *Id.*

In addition, the ALJ considered whether Plaintiff's mental impairments constituted per se disability under the "paragraph B" criteria. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ must identify limitations in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* The ALJ rates any limitation as either none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). If a claimant has one extreme limitation or two marked limitations in these functional areas, they may satisfy a listed disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast a moderate impairment means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.*

The ALJ found Plaintiff had moderate limitations in all categories except for a marked limitation in the interacting with others category. (AR 1115). In making this determination, the ALJ considered Plaintiff's activities of daily living, consultative examinations, and treatment notes and provided citations and explanations for her assessed limitations. (AR 1115-1116). Regarding

4

the marked limitation in the interacting with others, the ALJ noted Plaintiff's difficulties getting along with others, general antisocial attitude, and aversion to going places, including AA. (AR 1115). She also considered Plaintiff's particular troubles with authority figures such that she has been fired or laid off from jobs because of her interpersonal struggles. *Id.* The ALJ also accounted for Plaintiff's rapid speech, anxious demeanor, and some other abnormalities during certain examinations. *Id.*

### B. RFC Assessment.

Because the ALJ determined that none of Plaintiff's impairments qualified per se as disabling, she proceeded to determine Plaintiff's RFC. (AR 1116). The ALJ concluded that Plaintiff could perform "light work," pursuant to 20 C.F.R. § 416.967(b),[2] with the following non-exertional limitations:

> [S]he can perform simple, routine, and repetitive tasks with no fast-paced assembly line work. She can make simple work decisions, and the work should be performed in the same location every day. She can occasionally interact with co-workers and supervisors, but can rarely interact with the general public, defined as less than 10 percent of the workday. She cannot perform team, tandem, or customer service tasks.

*Id.* The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" in formulating this RFC. (AR 1117). She then reviewed and discussed the following evidence in light of the two-step process of first determining the impairment and then assessing whether the impairment could reasonably produce Plaintiff's symptoms. *Id.*

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

The Court will not recount the ALJ's entire RFC evidentiary discussion but only the portion relevant to the basis for remand. The ALJ considered the prior medical and administrative findings, noting she could not defer nor give greater weight to any prior administrative finding or medical source opinion. (AR 1121). She then evaluated the state agency psychological consultants' administrative findings on Plaintiff's limitations and found them generally persuasive. *Id.* (citing exhibits 3A; 4A; 7A; 8A; 15A; 5F; 6F). The ALJ explained:

> The findings are supported by what the consultants saw in the record at the time the findings were rendered, including with the claimant's treatment notes. Moreover, the findings are generally consistent with the record as a whole, including with her reports that she is able to prepare simple meals, shop by phone and computer, manage her finances, do puzzles, watch movies, and read AA literature. They are further consistent with her reports of being able to attend AA meetings, although she more recently testified that she had not been going to AA meetings for the past year due to her pregnancy and depression (Exhibit 8E; 23E). However, considering the claimant's agoraphobia, posttraumatic stress disorder, alleged panic attacks, and anxiety, I find the evidence more appropriately supports that the claimant has marked limitations in her ability to interact with others, especially the general public. These opinions are otherwise consistent with and supported by the evidence, including with the claimant's mental status findings of record, as noted above (e.g., Exhibit19F; 20F; 22F; 24F; 25F; 27F).

*Id.*

### C. Steps Four and Five.

At step four, the ALJ determined that Plaintiff's past relevant work as a day worker was precluded by her RFC, relying on the testimony of the vocational expert. (AR 1124). Therefore, the ALJ proceeded to step five and concluded that Plaintiff's RFC, age, education, and work experience would allow her to perform jobs existing in significant numbers in the national economy, including dishwasher, hand packager, and cleaner. (AR 1125). Based on all the above findings, the ALJ determined that Plaintiff did not have a "disability" as defined by the Social Security Act and therefore did not qualify for disability insurance benefits or supplemental security income. *Id.*

## IV. THE PARTIES' ARGUMENTS

Plaintiff alleges two points of error in this appeal. First, she argues the ALJ erred by failing to discuss Plaintiff's positive IVA-2 test results for ADHD when considering the persuasiveness of various medical opinions. [Doc. 11, at 27]. Plaintiff urges this evidence is critical because it "is the only non-self-reported objective assessment of Plaintiff's impairment in attention and concentration" aside from consultative examiner Dr. Owen's mental status examination. *Id.* Plaintiff explains the lack of discussion is harmful because the IVA-2 results showed her "global attention quotient was in the severely impaired range," aligning with Dr. Owens' opinion that Plaintiff has moderate to marked limitations in task persistence. *Id.* at 28; (AR 1119, 1121).

The ALJ discounted Dr. Owen's moderate to marked task persistence limitations because of examination findings showing good attention and concentration. (AR 1122). Plaintiff, however, argues the ALJ's omission of the IVA-2 testing tainted her assessment of the consistency of Dr. Owen's opinions with the record. [Doc. 11, at 28]. Thus, had the ALJ considered the IVA-2 testing in conjunction with Dr. Owen's opinion on task persistence, she would not have rejected a marked task persistence limitation for Plaintiff. As a result, the ALJ would have assessed Plaintiff with two marked mental limitations, qualifying her as disabled under the applicable regulations. The Commissioner argues the ALJ did discuss the testing earlier in the decision and was not required to repeat her discussion in the medical opinion section. [Doc. 15, at 2].

The second point of error relates to the ALJ's treatment of state agency consultant Dr. Lochner's opinion, who assessed Plaintiff with a marked limitation in her ability to respond appropriately to changes in the work setting, among others. [Doc. 11, at 29]; (AR 1121). The ALJ wrote that "[the] state agency psychological consultants' administrative findings at the initial and reconsideration levels concerning the claimant's limitations are generally persuasive." (AR 1121).

7

Plaintiff argues the ALJ's general acceptance of administrative findings is insufficient because it "provides no explanation for adopting the marked limitations in adaptive functioning as opined by Dr. Lochner" or their place in the RFC "despite finding them persuasive." [Doc. 11, at 30]. Plaintiff argues the lack of discussion precludes the Court from following the ALJ's reasoning, warranting remand. *Id.*

The Commissioner responds that no reversible error occurred because Dr. Lochner's marked limitation finding is just a description of a general limitation, not a workplace restriction for the RFC. [Doc 15, at 16]. Thus, the ALJ did not have to include it in the RFC discussion. The Commissioner further argues Dr. Lochner's opinion aligns with the ALJ's RFC insofar as both limit Plaintiff's public interactions, instruction and decision level, and workplace changes. *Id.* at 17. The Commissioner emphasizes the ALJ included stricter RFC workplace limitations than Dr. Lochner, meaning the RFC "accounts for, and is consistent with, all of Dr. Lochner's findings." *Id.* at 18.  It therefore concludes remand is not warranted. *Id.*

For the reasons explained herein, the Court finds Plaintiff's second issue for appeal regarding Dr. Lochner persuasive and will remand on that basis. Therefore, the Court will not address Plaintiff's other arguments, which may be affected by the treatment of Plaintiff's case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. ANALYSIS

The Court agrees with Plaintiff that the ALJ's failure to explain how it incorporated—or why it did not incorporate— Dr. Lochner's marked limitation in work setting changes into the RFC is harmful error. Indeed, Dr. Lochner's name cannot be found in the ALJ's decision, much less the marked limitations she assessed in several areas, including Plaintiff's overall mental RFC. (AR 136–37) (finding marked limitations in ability to understand and remember detailed instructions,

8

ability to carry out detailed instructions, and ability to respond appropriately to changes in the work setting).

An ALJ must review the persuasiveness of all proffered administrative findings and medical opinions on a claimant's limitations and explain how they impacted the RFC assessment. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treating relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 416.920c(c). The "most important factors" are supportability and consistency. *Id.* The ALJ need not discuss every factor so long as she adequately supports the persuasiveness that she assigns the opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not, without explanation, downplay, mischaracterize, or cherry-pick elements from a medical opinion or fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

"The ALJ must not only consider the important evidence, but his decision must demonstrate the path of his reasoning. The evidence in the case must lead logically to the fact-finder's conclusion." *Correa v. Berryhill*, No. 16-cv-01314, 2018 WL 1472480, at *8 (D.N.M. Mar. 26, 2018) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1095 (E.D. Wis. 2001)). "The reasons given by the trier of fact must build an accurate and logical bridge between the evidence and the result." *Id.* (internal citation and quotation omitted).

Here, the ALJ failed to build a logical bridge adequately accounting for all the limitations in Dr. Lochner's opinion, which the ALJ presumably found persuasive based on her statement that the state psychological consultants' opinions are "generally persuasive." (AR 1121). The Court is thus left to speculate as to how the RFC comports with Dr. Lochner's marked limitations within

9

the categories of concentration and persistence, understanding and memory, and adaptation. (AR 136, 137). The Court will not indulge in speculation.

The Commissioner invites the Court to overlook the omission because Dr. Lochner's assessed limitations are similar to the ALJ's ultimate RFC formulation, making any error harmless. However, there is material inconsistency between Lochner's opinion and the ALJ's subsequent analysis. *Compare* (AR 137) (Lochner assessing a marked limitation in ability to respond to changes in the workplace), *with* (AR 1122) (ALJ rejecting similar finding by Dr. Owens). This error is not harmless because the consideration of additional marked limitations—even those within broader functional categories—may further restrict the RFC such that Plaintiff cannot perform the requirements of jobs existing in significant numbers in the national economy. Therefore, the failure to elaborate on Dr. Lochner's opinion is harmful and warrants remand.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand [Doc. 11] is **GRANTED** and the matter is **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

_____
Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent